

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

norable O. P. Lockhart, Chairman
ard of Insurance Commissioners
stin, Texas

ar Sir:

Opinion No. O-6110
Re: Under the facts submitted
is the agreement made be-
tween the Republic Oil
Refining Company of Texas
and the Oil Workers Inter-
national Union, an insurance
contract?

We are in receipt of your request for an opinion on
above matter, said request reading as follows:

"Enclosed you will please see excerpts from
a contract between the Republic Oil Refining Com-
pany of Texas City, Texas and the Oil Workers
International Union, which the former has submit-
ted to this Department with the inquiry as to
whether the benefits for sickness and accident
therein provided are such as would constitute an
insurance by the oil refining company and as a
consequence be prohibited under our insurance
title.

"Will you please advise me whether such an
agreement is an insurance contract."

The excerpts from the contract referred to and which
enclose are as follows:

### "ARTICLE XI

"(Accident and Sickness Benefits)

"Section 1. Effective as of the date of this
agreement an employee who has thereafter completed

ATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

six months of continuous service shall be entitled
to sick leave benefits in accordance with the fol-
lowing schedule:

| Upon Completion of Continuous Service of: | Maximum Benefits Allowed: |
|---|---|
| Six months to three years | Four weeks |
| Three years | Five weeks |
| Four years | Six weeks |
| Five years | Seven weeks |
| Six years | Eight weeks |
| Seven years | Nine weeks |
| Eight years | Ten weeks |
| Nine years | Eleven weeks |
| Ten years or more | Twelve weeks |

"Section 2.  Exceptions:

(a)  An employee shall not be entitled to sick leave
benefits under this Article if his illness or injury
was due to:

    (1) His wilful intention to injure himself or
        another
    (2) Venereal disease
    (3) Intoxication
    (4) Use of habit forming drugs
    (5) Misconduct

(b)  An employee shall not be entitled to sick leave
benefits under this Article if an illness or accident
occurs while:

    (1) The employee is on leave of absence
    (2) The employee is absent due to a lay-off
    (3) An employee is on a suspension

"ARTICLE XI
(Accident and Sickness Benefits)
"Section 3.  Computation of Benefits:
The amount of weekly sick leave benefit shall
be computed by multiplying the employee's estab-
lished straight time hourly rate of pay times the
number of hours in the employee's established work
week.  Fractions of the work week shall be computed
on the basis that the number of days of sick leave

benefit bears to the number of days in the employee's established work week times the amount determined above. Sick leave benefits shall be paid in accord-ance with the established pay periods.

"Section 4. Every eligible employee who is absent from duty on account of sickness or injury shall immediately notify the Industrial Relations Department, and the employee will not receive bene-fits as provided in this plan for the time lost pre-vious to such notice.

"Section 5. Limitations

(a) For the first three scheduled working days after proper notice has been given in accordance with Section 4 of this Article, there shall be no sick benefit paid unless the sickness extends into the fourth scheduled working day, in which case pay-ment shall include the first three scheduled working days.

(b) No employee will be entitled to benefits during any anniversary year greater than the total number of weeks shown by the schedule in Section 1. Unused benefits during any anniversary year may not be car-ried over from one year to another.

(c) If an employee entitled to benefits as provided in this Article is absent as a result of an occupa-tional illness or an industrial accident all the sick benefit provisions in this article will apply. Pro-vided, however, that the Company shall be credited with the compensation insurance payment to an employee subject to this Article in discharging the Company's obligation to an employee under this Article.

(d) If any law is enacted that provides for any or all of the benefits covered by this Article, then the Company shall be credited with the amount of such benefits in discharging the Company's obligation to an employee as provided for in this Article.

(e) Weekly benefits provided by the Group Insurance plan carried by this Company shall be cancelled as of the effective date of this Agreement.

Hon. O. P. Lockhart, Page 4

"Section 6.  Records

"In the application of this Article, the records of the Company shall be conclusive in determining the employee's length of service, salary, wages and amount of benefits to which he is entitled.

"Section 7.  Cancellation of Benefits:

"An employee shall lose all benefits provided by this Article for the following reasons:

(a) Resigns
(b) Discharged for cause
(o) Accepts other employment during a leave of absence, (except as expressly approved by the Company).
(d) Overstays his leave of absence
(e) Absent without leave for three consecutive working days
(f) Having been laid off and having thereafter been offered employment by the Company directly or by notice to the Union, and he does not within five (5) working days thereafter give notice of acceptance of such employment, and within another five (5) working days after giving such notice fails to appear at the Plant ready for work.
(g) Is laid off for one hundred eighty (180) calendar days
(h) Is off duty for one calendar year or more due to non-occupational sickness or injury.

"Section 8.  It is agreed that any abuse of this Article by an employee shall mean his immediate discharge.

"Section 9. An employee cannot collect the benefits of this Article and the benefits of Article IX at the same time.

"Section 10.  An employee who is injured in the refinery and is sent home because of such injury shall receive pay at his regular hourly rate for the balance of the employee's scheduled work-day, on which the injury occurred."

Article 4716 of Vernon's Annotated Revised Civil Statutes is in part as follows:

". . . An accident insurance company shall
be deemed to be a corporation doing business under
any charter involving the payment of money or other
thing of value, conditioned upon the injury, disable-
ment or death of persons resulting from traveling or
general accidents by land or water. A health insur-
ance company shall be deemed to be a corporation
doing business under any charter involving the pay-
ment of any amount of money or other thing of value,
conditioned upon loss by reason of disability due to
sickness or ill-health. . . ."

The word "insurance" is defined in 24 Tex. Juris.,
P. 650, as follows:

"'Insurance' is a word of comprehensive and
varied meaning. In a general sense, the term sig-
nifies an agreement, for a consideration, to pay a
sum of money upon the happening of a particular event
or contingency, or indemnifying for loss in respect
of a specified subject by specified perils; in other
words, an undertaking by one party, usually called
the insurer, to protect the other party, generally
designated as the insured or the assured, from loss
arising from named risks, for the consideration and
upon the terms and under the conditions recited."

The word "insurance" is defined in 32 Corpus Juris.,
P. 975, as follows:

"Broadly defined, insurance is a contract by
which one party, for a compensation called the pre-
mium, assumes particular risks of the other party
and promises to pay to him or his nominee a certain
or ascertainable sum of money on a specified con-
tingency. As regards property and liability insur-
ance, it is a contract by which one party promises
on a consideration to compensate or reimburse the
other if he shall suffer loss from a specified
cause, or to guarantee or indemnify or secure him
against loss from that cause. With some exceptions,
particularly is a contract of indemnity. The term
insurance denotes also the act of insuring by the
contract here defined, as well as the system of
business of which such contracts are the character-
istic and vital element."

It will be noted that the above quoted definitions of "insurance" contain two specific agreements, one by the insured to pay a consideration or premium for the benefits he is to receive, and the other by the insurer to indemnify the insured against loss upon the happening of a particular contingency. Neither of these agreements appears in the above quoted excerpts from the contract referred to by you, in fact it is evident that such excerpts contain nothing more than an offer or agreement on the part of Republic Oil Refining Company of Texas to pay additional compensation to its employees who shall render continuous services for a specified period of time. Such an agreement is somewhat akin to those covering the payment of a bonus for services previously performed upon the understanding that same should be paid under certain named conditions, and in regard to which the Supreme Court of Missouri made the following statement in the case of Putnam v. Juvenile Shoe Corp., 40 A. L. R., 1412:

"The payment of a bonus, when appropriately authorized, is not in itself a fraud upon dissenting stockholders. The practice has become common among large employers, and tends to stimulate loyalty, faithfulness, activity, and energy in employees, and gives them a real interest in the business of the employer beyond the extent of such qualities reasonably to be expected where a definite and unfluctuating compensation is all such employees have the right to anticipate. The natural tendency of a bonus, the amount of which is contingent upon profits, is to build up that quality known as esprit de corps. It tends to produce profits beyond what may otherwise be expected. Hence, where the amount of the bonus is not unreasonably large, it tends to increase the profits of the employer as well as the compensation of the employed. It tends to make employees less wasteful of materials and more watchful of the interests of the employer, because employees thereby conserve their own interests. It tends to hold experienced employees in service, when employment is plentiful and employees scarce, and to reduce the annual turn-over of labor, thereby making for permanence in the personnel of employees, avoids the necessity of and loss incurred in training new recruits, and builds up the average skill and efficiency of those employed. All these things are to the evident advantage of the employer.

"In one form or another the practice is hoary with age. The farmer knows that the promise to his hired man of quitting early and the loan of a horse and buggy for the evening off will produce a big day's work long before the early quitting time. The teacher knows that the prospect of a half holiday, if there are no cases of tardiness, will insure the early arrival at school of every pupil, upon pain of the displeasure of his fellow students. So it is in industry. An expected bonus based upon results tends to discourage and expose employees who are inclined to be lazy, thoughtless, inefficient, and wasteful. Experience has demonstrated that the payment of a bonus works to the benefit of employer and employee alike and, within reasonable bounds, is advantageous to stockholders of corporations employing labor. Courts have recognized this and have given their sanction to the practice. . ."

39 Corpus Juris., Sec. 192, pp. 143-144, lays down the following rules:

"The right of an employee to compensation rests in general upon the performance of services, under an agreement, express or implied, that compensation shall be had therefor, although there need be no definite agreement as to the amount thereof. However, by express agreement of the parties, the employee may be entitled to compensation for a period of time during which no services are rendered. In the case of an express agreement as to compensation, its terms control." (emphasis added)

And Section 196, pages 147-148 thereof is in part as follows:

"An employee is not entitled to recover for lost time where there is no agreement to that effect, or where the contract of employment allows compensation only for the days the employee works. Where the employee is given a vacation with pay, or a leave of absence is granted, . . . the employee is entitled to his wages for the time off."

Hon. O. P. Lockhart, Page 8

In the case of Missouri, K. & T. Ry. Co. of Texas v. Bryant, 178 S. W. 685, writ refused, the Court had under consideration the right of an assistant general manager of the railway company to recover the balance of salary claimed to be due for time spent on leave of absence due to sickness. In affirming judgment therefor, the Court of Civil Appeals held that, since the absence was authorized and granted in good faith by an officer who had authority so to do, and the authorization of said leave having expressly provided that such salary should be drawn during the period of leave, the assistant general manager was entitled to pay for the time covered by such leave of absence.

Under the rules of law above referred to, the question of pay during time off duty by reason of sickness or accident under the terms and conditions expressed in the excerpts set out would, in our opinion, not be a matter of insurance, such excerpts showing no more than an agreement to pay extra compensation for continuous services. It is our opinion, therefore, that your question should be answered in the negative.

Trusting that this satisfactorily answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*

Jas. W. Bassett
Assistant

JWB:fb